United States District Court
Southern District of Texas

**ENTERED**

March 10, 2016

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ANDREW ANTONY and | § | |
| JENSY ANTONY, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-15-1062 |
| | § | |
| UNITED MIDWEST SAVINGS BANK, | § | |
| *et al*., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

**I.    Background**

Andrew Antony and Jensy Antony challenge the foreclosure of their home.  On March 12,

2010, Jensy Antony signed a Texas Home Equity Note in the amount of $129,000 in favor of United

Midwest Savings Bank.  Both Jensy Antony and Andrew Antony signed a Texas Home Equity

Security Instrument granting Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee

for United Midwest and its successors and assigns, a security interest in the property they had

borrowed the money to purchase.  (Docket Entry No. 11, Exs. A-1, A-2).  On March 22, 2010, the

Antonys were given notice that the ownership of, and the servicing rights to, the loan secured by the

Note were transferred from United Midwest to Flagstar Bank.  (Docket Entry No. 11, Ex. A-3).

The Antonys defaulted in May 2012.  (Docket Entry No. 11, Ex. A-7).  On August 23, 2012,

James Abbas, a Flagstar employee and MERS signing officer authorized to transfer mortgages on

MERS's behalf, assigned the Deed of Trust from MERS to Flagstar.  (Docket Entry No. 11, Exs.

A-4, A-5).  On August 31, 2012, the assignment was recorded in the Harris County real-property

records.  (Docket Entry No. 11, Ex. A-4).  Flagstar began foreclosure in December 2012 and

foreclosed in September 2013.  (Docket Entry No. 14, Ex. A).  The property was sold to the Federal

Home Loan Mortgage Corporation ("Freddie Mac").  (Docket Entry No. 11, Ex. A-6).

In February 2014, the Antonys filed suit in Texas state court against United Midwest,

Flagstar, MERS, and Freddie Mac.  In an amended petition filed in April 2014, the Antonys asserted

causes of action for wrongful foreclosure based on lack of standing to foreclose, quiet title, breach

of contract, and violation of the Truth-In-Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*  (Docket

Entry No. 1, Ex. 4 p. 9–27).  They also sought a declaratory judgment that the defendants did not

have an interest in their property.  After pretrial litigation in state court, the defendants removed to

federal court under 12 U.S.C. § 1452(f).  The defendants moved for summary judgment, (Docket

Entry No. 11), the Antonys responded, (Docket Entry No. 17), and the defendants replied, (Docket

Entry No. 18).  The defendants also moved to supplement the summary judgment record, (Docket

Entry No. 14), which the Antonys did not oppose.

Based on a careful review of the motions, the briefs and submissions, the pleadings, the

record, and the applicable law, the court grants the defendants' motions for summary judgment and

to supplement the summary judgment record.  (Docket Entry Nos. 11, 14).  Final judgment is entered

by separate order.  The reasons are explained below.

II.     **Summary Judgment Under Rule 56**

"Summary judgment is required when 'the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Trent v. Wade*,

776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)).  "A genuine dispute of material

fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving

party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*,783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *EEOC*, 773 F.3d at 694). The nonmovant must identify specific

evidence in the record and articulate how that evidence supports that party's claim.  *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

## III.    Discussion

### A.    Whether Flagstar Had Standing to Foreclose

Under the Texas Property Code, two parties have standing to initiate a non-judicial foreclosure sale: the mortgagee and the mortgage servicer acting on behalf of the mortgagee.  *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 342–43 (5th Cir. 2013) (per curiam); *see* TEX. PROP. CODE §§ 51.002, 51.0025.  A mortgagee is: "the grantee, beneficiary, owner, or holder of a security instrument"; "a book entry system"; or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record."  TEX. PROP. CODE § 51.0001(4).  A mortgage servicer is "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument.  A mortgagee may be the mortgage servicer."  *Id.* § 51.0001(3).

#### 1.    Standing Under the Deed of Trust

The Fifth Circuit has "expressly recognized that MERS may assign a deed of trust to a third party and that such assignments confer the new assignee standing to non-judicially foreclose on property associated with that particular deed of trust."  *Reece v. U.S. Bank Nat'l Ass'n*, 762 F.3d

4

422, 425 (5th Cir. 2014) (per curiam) (citing *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d

249, 253–55 (5th Cir. 2013)).  The Fifth Circuit has also recognized that "the law is settled in Texas

that an obligor cannot defend against an assignee's efforts to enforce the obligation on a ground that

merely renders the assignment voidable at the election of the assignor."  *Reinagel v. Deutsche Bank*

*Nat'l Trust Co.*, 735 F.3d 220, 225 (5th Cir. 2013) (quotation marks omitted).  The obligor may,

however, "defend on any ground which renders the assignment void."  *Id.* (quotation marks omitted).

Flagstar submitted evidence of its standing to foreclose under the Deed of Trust through a

facially valid assignment from MERS signed by James Abbas, a Flagstar employee and a MERS

signing officer.  That assignment was recorded in the Harris County real-property records.  (Docket

Entry No. 11, Ex. A-4).  In part because "[r]eal property records often contain transfers taking place

many years in the past," Texas law "'view[s] with suspicion and distrust attempts to discredit

certificates of acknowledgment,' under which the transfer is presumptively valid and contradicting

evidence 'must be clear, cogent, and convincing beyond reasonable controversy.'"  *Morlock, L.L.C.*

*v. JP Morgan Chase Bank, N.A.*, 586 F. App'x 631, 634 (5th Cir. 2013) (per curiam) (quoting *Ruiz*

*v. Stewart Mineral Corp.*, 202 S.W.3d 242, 248 (Tex. App.—Tyler 2006, pet. denied)).

The Antonys argue that the assignment of the Deed of Trust to Flagstar was void because

Abbas lacked authority to assign the Deed of Trust on MERS's behalf.  The Antonys rely on

MERS's corporate resolution, which states that MERS signing officers have authority to "assign the

lien of any mortgage loan naming MERS as the mortgagee" only when (1) "the Member is also the

current promissory note-holder," or (2) "the mortgage loan is registered on the MERS System [and]

is shown to be registered to the Member."  (Docket Entry No. 11, Ex. A-5 § 2).  The corporate

resolution states that "any action taken by a Signing Officer that is not specifically enumerated [in

the resolution] is beyond the scope of the authority granted to such Signing Officer, is *ultra vires*, and shall be null and void . . . ." (*Id.*). The Antonys reason that because Flagstar did not hold the Note when the Deed of Trust was assigned, Abbas lacked signing authority and the assignment is void. Under Texas law, however, any lack of authority would make the assignment voidable. *Wood v. Bank of Am.*, No. 14-cv-00073, 2015 WL 2378958, at *6 n.8 (N.D. Tex. Apr. 23, 2015) ("The Texas Supreme Court has held that a contract executed on behalf of a corporation by a person fraudulently purporting to be a corporate officer is, like any other unauthorized contract, not void, but merely voidable at the election of the defrauded principal." (citing *Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976)). If the assignment was voidable, the Antonys do not have standing to challenge it. *Reinagel*, 735 F.3d at 225

Even assuming that the Antonys have standing to raise the challenge, the record provides no support. The undisputed summary judgment evidence includes a "notice of transfer of mortgage loan" sent by Flagstar to Jensy Antony on March 22, 2010. (Docket Entry No. 11, Ex. A-3 at p. 6). The notice states that the mortgage loan was transferred from United Midwest to Flagstar on March 22, 2010. It also states that Flagstar became the loan servicer and that the ownership transfer had not yet been recorded in the public records. The notice of transfer clearly shows that the ownership of and the loan-servicing rights the Note secured were transferred from United Midwest to Flagstar on March 22, 2010, more than two years before MERS assigned the Deed of Trust to Flagstar. (*Id.*). Undisputed evidence shows that Flagstar held the Note when Abbas assigned the Deed of Trust from MERS to Flagstar. The assignment was therefore not void under the MERS corporate resolution.

There is no factual dispute material to determining whether MERS's assignment of the Deed of Trust to Flagstar was void. It was not, and Flagstar had standing to foreclose. *See Martins*, 722

F.3d at 253–55.

### 2.    Standing Under the Note

Even if the assignment of the Deed of Trust from MERS to Flagstar was void, the record

shows that Flagstar was the holder of the Note at foreclosure and had standing to foreclose on that

basis.   *See* TEX. PROP. CODE § 51.0001(4).   Texas law defines a "holder" as "the person in

possession of a negotiable instrument that is payable either to bearer or an identified person that is

the person in possession[.]"  TEX. BUS. & COM. CODE § 1.201(b)(21)(A).  "A person can become

the holder of an instrument when the instrument is issued to that person; or he can become a holder

by negotiation."  *Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2004, no

pet.) (citing TEX. BUS. & COM. CODE. § 3.201 cmt. 1 (2002)).  "[N]egotiation requires transfer of

possession of the instrument *and* its indorsement by the holder."   TEX. BUS. & COM. CODE.

§ 3.201(b) (emphasis added). "The indorsement must be written by or on behalf of the holder and

on the instrument or on a paper so firmly affixed to it as to become part of it.  If an instrument not

in the possession of the original holder lacks a written indorsement and proof of the chain of title,

the person in possession does not have the status of a holder." *Leavings*, 175 S.W.3d at 309 (citation

omitted).

Flagstar has shown that United Midwest indorsed the Note and that Flagstar possessed it at

foreclosure. (Docket Entry No. 11, Ex. A-1).  Flagstar also submitted an affidavit by Vanessa

Ellison, a loan-administration analyst, who stated that, based on her review of Flagstar's records,

United Midwest indorsed the Note to Flagstar, and Flagstar possessed it, when Flagstar foreclosed

on the Antonys' property.  (Docket Entry No. 14, Ex. A ¶ ¶ 8(a), 8(f)).

The Antonys challenge the Note indorsement because the endorser signed for United

"Mortgage" Savings Bank, not United Midwest Savings Bank, the original lender.  The argument

fails for two reasons.  First, Ellison's affidavit testimony is competent proof that United Midwest

transferred the Note and that Flagstar held the Note when it foreclosed.  *Christian v. Univ. Fed. Sav.*

*Ass'n*, 792 S.W.2d 533, 534 (Tex. App.—Houston [1st Dist.] 1990, no writ).  The Antonys have not

argued that Ellison lacks personal knowledge or is otherwise incompetent to testify.  Second, the

Antonys have identified a typographical error in the indorsement of the Note, which, at most, makes

the Note voidable.  *Turberville v. Upper Valley Farms, Inc.*, 616 S.W.2d 676, 678 (Tex. Civ.

App.—Corpus Christi 1981, no writ); *Louviere v. Power*, 389 S.W.2d 333,  335 (Tex. Civ.

App.—Waco 1965, writ refused n.r.e.).  But the Antonys do not have standing to "defend against

an assignee's efforts to enforce the obligation on a ground that merely renders the assignment

voidable at the election of the assignor."  *Reinagel*, 735 F.3d at 225.

There is no factual dispute material to determining that Flagstar held the Note and therefore

had standing when it foreclosed.  Summary judgment is granted dismissing the wrongful-foreclosure

claim.[1]

## B.      The Claim for Relief to Quiet Title

Under Texas law, "[a] suit to clear or quiet title—also known as suit to remove cloud from

title—relies on the invalidity of the defendant's claim to the property."  *Essex Crane Rental Corp.*

---

[1]  The Antonys also point to the defendants' state-court discovery admission that the loan was transferred to Freddie Mac. (Docket Entry No. 17, Ex. 7 ¶¶ 29, 30).  The Antonys argue that the admission conflicts with Ellison's affidavit, which states that Flagstar, not Freddie Mac, held the Note when Flagstar foreclosed.  The discovery admission does not state when the loan was transferred to Freddie Mac, and there is no basis in the record supporting a reasonable inference that Freddie Mac held the Note when Flagstar initiated the foreclosure.  Because Flagstar met its burden to show standing to foreclose, the Antonys must come forward with evidence showing a fact dispute that is based on more than "'some metaphysical doubt as to the material facts, . . . conclusory allegations, . . . unsubstantiated assertions, or . . . only a scintilla of evidence.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).

*v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).  This equitable action "exists 'to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.'"  *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quoting *Thomson v. Locke*, 1 S.W. 112, 115 (1886)).

"Under Texas law, to prevail in a suit to quiet title, the plaintiff must prove: (1) his right, title, or ownership in real property; (2) that the defendant has asserted a 'cloud' on his property, meaning an outstanding claim or encumbrance valid on its face that, if it were valid, would affect or impair the property owner's title; and (3) that the defendant's claim or encumbrance is invalid." *Warren v. Bank of Am., N.A.*, 566 F. App'x 379, 382 (5th Cir. 2014) (per curiam) (citing *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.)).  "'The plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief,'" and "the plaintiff 'must prove and recover on the strength of his own title, not the weakness of his adversary's title.'"  *Id.* (alteration omitted) (quoting *Hahn*, 321 S.W.3d at 531; *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.)).  "[A]rguments that merely question the validity of an assignment of a deed of trust from MERS to another mortgage servicer are not a sufficient basis for a quiet title action under Texas law."  *Id.* at 383 (citing *Morlock*, 586 F. App'x at 633).

"Texas courts have made clear that 'a necessary prerequisite to the . . . recovery of title . . . is tender of whatever amount is owed on the note.'"  *Cook-Bell v. Mortg. Elec. Registration Sys., Inc.*, 868 F. Supp. 2d 585, 591 (N.D. Tex. 2012) (omissions in the original) (quoting *Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.)); *see also*

*James v. Wells Fargo Bank, N.A.*, No. 14-cv-0449, 2014 WL 2123060, at *8 (S.D. Tex. May 21, 2014).  The plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see [that] he or she has a right of ownership that will warrant judicial interference." *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, rev. denied). The record does not contain evidence showing that the Antonys' claim to the property is superior to the defendants' claim.  The Antonys do not dispute that they are in default on the mortgage loan and that the outstanding principal balance is over $116,000.  (Docket Entry No. 11, Ex. A-7).  The Antonys have not tendered the amount due, which is required for "recovery of title." *Cook-Bell*, 868 F. Supp. 2d at 591.  As a matter of law, the Antonys "do[] not assert a superior title, and allege[] no facts to support a superior claim." *Bell v. Bank of Am. Home Loan Servicing LP*, 11-cv-02085, 2012 WL 568755, *7 (S.D. Tex. Feb. 21, 2012).

As noted above, the copies of the assignments of the Note and Deed of Trust in the record establish an unbroken chain of title to the property from United Midwest, the original lender, and MERS, the beneficiary and nominee for United Midwest and its assigns, to Flagstar, the party attempting to foreclose.  These documents further support the superiority of Flagstar's title to the property.

Summary judgment is granted dismissing the claim to quiet title.

## C.     The TILA Claim

The Antonys alleged in their petition that the defendants failed to notify them of the assignments of the Note and Deed of Trust, in violation of the TILA.  The purpose of the TILA is to protect the consumer from inaccurate and unfair credit practices and "'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various

credit terms available to him and avoid the uninformed use of credit.'"  *James v. City Home Serv.,*

*Inc.*, 712 F.2d 193, 194 (5th Cir. 1983) (quoting 15 U.S.C. § 1601(a)).  The statute of limitations for

TILA claims is one year, and limitations runs from the date each violation occurred.  15 U.S.C. §

1640(e).  A violation occurs if "30 days after the date on which a mortgage loan is sold or otherwise

transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt

[fails to] notify the borrower in writing of such transfer . . . ."  15 U.S.C. § 1641(g).

The defendants assert that limitations bars any TILA claim.  The last assignment was on

August 23, 2012, when MERS assigned the Deed of Trust to Flagstar.  (Docket Entry No. 11, Ex.

A-4).  The statute of limitations began to run 30 days later.  The Antonys did not file suit until

February 2014, well after the one-year limitations period ended.  The claim is time barred.  *See*

*Bittinger v. Wells Fargo Bank, N.A.*, 744 F. Supp. 2d 619, 628 (S.D. Tex. 2010); *see also Benitez*

*v. Am.'s Wholesale Lender*, No. 14-cv-953, 2014 WL 3388650, at *2 (S.D. Tex. July 9, 2014).

The defendants also argue that the claim fails because there is no record evidence that the

Antonys suffered damages.  The TILA provides a cause of action against "any creditor who fails to

comply with" § 1641(g).  *See* 15 U.S.C. § 1640(a).  The creditor is liable for "any actual damage

sustained" from the violation, *id.* § 1640(a)(1), and "twice the amount of any finance charge in

connection with the transaction," *id.* § 1640(a)(2)(A)(i).  Even assuming that Flagstar violated §

1641(g), there is no evidence showing that the Antonys suffered "actual damage" from that

violation, or that the Antonys paid finance charges associated with the loan.  *See Jameel v. Flagstar*

*Bank, FSB*, No. 12-cv-1510, 2012 WL 5384177, at *8 (S.D. Tex. Nov. 2, 2012); *Turner v.*

*AmericaHomeKey, Inc.*, No. 11-cv-860, 2011 WL 3606688, at *3 (N.D. Tex. Aug. 16, 2011).  This

provides an independent ground supporting summary judgment.

Summary judgment is granted dismissing the TILA claim.

### D.       The Breach-of-Contract Claim

The final claim is for breach of contract.  The Antonys argue that the defendants breached the deed of trust.  "In Texas, the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (alteration omitted) (quotation marks omitted).  "'[A] party to a contract who is himself in default cannot maintain a suit for its breach.'" *Golden v. Wells Fargo Bank, N.A.*, 557 F. App'x 323, 327–28 (5th Cir. 2014) (per curiam) (quoting *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990)) (breach of note); *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 238 (5th Cir. 2014) (per curiam) (breach of deed of trust). "This is so because an essential element of a breach of contract claim under Texas law is that the 'plaintiff performed or tendered performance.'" *Ybarra v. Wells Fargo Bank, N.A.*, 575 F. App'x 471, 474 (5th Cir. 2014) (per curiam) (quoting *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 898 (Tex. App.—San Antonio 2002)).  It is undisputed that the Antonys defaulted on their loan and did not make payments to bring the loan current.  (Docket Entry No. 11, Ex. A-7).  They have not performed or tendered performance of their contract obligations and therefore cannot establish an element of the cause of action.

Summary judgment is granted dismissing the breach-of-contract claim.[2]

---

[2]    The Antonys seek leave to amend their complaint if any of their "allegations are found insufficient."  (Docket Entry No. 17 at p. 25).  The Antonys also argue that several of their claims were "properly pleaded" and that they should survive the defendants' summary judgment motion on that basis. (*Id.* at p. 13, 18, 22).  The defendants moved for summary judgment under Rule 56, submitting evidence that was obtained during discovery in the state-court litigation before removal.  The Antonys responded and submitted evidence of their own.  Whether the Antonys properly pleaded their claims is not the relevant

**IV.     Conclusion**

The defendants' motions for summary judgment and to supplement the summary judgment record are granted.  (Docket Entry Nos. 11, 14).  All claims are dismissed with prejudice.  Final judgment is entered by separate order.

SIGNED on March 10, 2016, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

standard at this stage.  The Antonys cannot amend their complaint on summary judgment because it "would likely require additional discovery and another motion for summary judgment, which would unduly prejudice the defendants and raise concerns about seriatim presentation of facts and issues." *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (per curiam).