Case 4:15-cv-01062   Document 28   Filed in TXSD on 05/19/16   Page 1 of 6

United States District Court
Southern District of Texas
**ENTERED**
May 19, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ANDREW ANTONY and § | |
| JENSY ANTONY, § | |
| § | |
| Plaintiffs, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-15-1062 |
| § | |
| UNITED MIDWEST SAVINGS BANK, § | |
| *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER DENYING MOTION FOR RECONSIDERATION**

**I.     Background**

Andrew Antony and Jensy Antony challenge the foreclosure of their home. On March 12, 2010, Jensy Antony signed a Texas Home Equity Note in the amount of $129,000 in favor of United Midwest Savings Bank. Both Jensy Antony and Andrew Antony signed a Texas Home Equity Security Instrument granting Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for United Midwest and its successors and assigns, a security interest in the property they borrowed the money to purchase. (Docket Entry No. 11, Exs. A-1, A-2). On March 22, 2010, the Antonys were given notice that the ownership of, and the servicing rights to, the loan secured by the Note were transferred from United Midwest to Flagstar Bank. (Docket Entry No. 11, Ex. A-3).

The Antonys defaulted in May 2012. (Docket Entry No. 11, Ex. A-7). On August 23, 2012, James Abbas, a Flagstar employee and a MERS signing officer authorized to transfer mortgages on MERS's behalf, assigned the Deed of Trust from MERS to Flagstar. (Docket Entry No. 11, Exs. A-4, A-5). On August 31, 2012, the assignment was recorded in the Harris County real-property records. (Docket Entry No. 11, Ex. A-4). Flagstar began foreclosure in December 2012 and

foreclosed in September 2013. (Docket Entry No. 14, Ex. A). The property was sold to the Federal Home Loan Mortgage Corporation ("Freddie Mac"). (Docket Entry No. 11, Ex. A-6).

In February 2014, the Antonys sued United Midwest, Flagstar, MERS, and Freddie Mac in Texas state court. In an amended petition filed in April 2014, the Antonys asserted causes of action for wrongful foreclosure based on lack of standing to foreclose, quiet title, breach of contract, and violations of the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* (Docket Entry No. 1, Ex. 4 p. 9–27). They also sought a declaratory judgment that the defendants did not have an interest in their property. The defendants removed to federal court under 12 U.S.C. § 1452(f).

The defendants moved for summary judgment. (Docket Entry No. 11). The court granted the motion and entered a final judgment. (Docket Entry Nos. 22, 23). The Antonys have moved for reconsideration, and the defendants responded. (Docket Entry Nos. 24, 27). Based on a careful review of the motions, the briefs and submissions, the pleadings, the record, and the applicable law, the court denies the motion for reconsideration. The reasons are explained below.

## II.     The Legal Standard for a Motion for Reconsideration

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997) ("[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration."). A court retains the power to revise an interlocutory order before entering judgment adjudicating the parties' claims, rights, and liabilities. FED. R. CIV. P. 54(b). A motion that asks the court to change an order or judgment is generally considered a motion to alter or amend under Rule 59(e). *T-M Vacuum Products, Inc. v. TAISC, Inc.*, No. 07-cv-4108, 2008 WL 2785636, at *2 (S.D. Tex. July 16, 2008). A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (citing *In re*

*Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). A Rule 59(e) motion "'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Changing an order or judgment under Rule 59(e) is an "extraordinary remedy" that courts should use sparingly. *Templet*, 367 F.3d at 479; *see also* 11 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2810.1 at 124 (2d ed. 1995). The Rule 59(e) standard "favors denial of motions to alter or amend a judgment." *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993). A motion to reconsider may not be used to relitigate matters or to raise arguments or present evidence that could have been raised before the entry of the judgment or order. 11 WRIGHT & MILLER § 2810.1 at 127–28 (footnotes omitted).

## III.     Discussion

The Antonys challenge the court's conclusion that there is no factual dispute material to determining that Flagstar had standing to foreclose under the Deed of Trust and the Note. The Antonys do not rely on newly discovered evidence. They argue that the court's legal conclusions were manifestly erroneous.

The Antonys first argue that the court manifestly erred in concluding that they did not have standing to challenge Abbas's lack of signing authority. Although the court expressed doubt that the Antonys had standing, it assumed standing and analyzed the merits of their claim. (Docket Entry No. 22 at p. 6).

The Antonys next argue that the "notice of transfer of mortgage loan" sent by Flagstar to Jensy Antony on March 22, 2010 does not show that Flagstar held the Note when Abbas assigned the Deed of Trust on MERS's behalf on August 23, 2012, as required under MERS's corporate

3

resolution. The Antonys contend that the notice shows only a loan-servicing rights transfer, not a note-ownership transfer. They point to the fact that the notice does not explicitly refer to the Note and that correspondence from United Midwest shows that it remained the lender despite the servicing transfer. (Docket Entry No. 24 at p. 6).

Flagstar's "notice of transfer of mortgage loan" states that Jensy Antony's "mortgage loan . . . has been transferred to us." (Docket Entry No. 11, Ex. A-3 at p. 6). The notice states that "[t]he date of the transfer of your mortgage loan [is March 22, 2010]" but that "[t]he transfer of ownership is not recorded in the public records at this time." It further states that Flagstar "also" became the loan servicer. Although it does not explicitly refer to the Note, the notice makes clear that the ownership of, and the servicing rights to, the loan secured by the Note were transferred from United Midwest to Flagstar Bank on March 22, 2010.

The notice from United Midwest is consistent. That notice, dated March 12, 2010, informed Antony of the servicing-rights transfer. The notice stated that the current lender was United Midwest. The notice did not state, as the Antonys argue, that United Midwest would "remain" the lender despite the servicing transfer. (Docket Entry No. 11, Ex. 3-A at p. 2).

The Antonys respond that under Texas law, the notice cannot be evidence that United Midwest transferred the Note to Flagstar. The question is whether, under MERS's corporate resolution, the notice is evidence that Flagstar was the "current promissory note-holder" when James Abbas signed the assignment of the Deed of Trust on MERS's behalf. There is no record evidence disputing the validity of the notice. Nor is there record evidence raising a factual dispute about when ownership of the Note was transferred. The record does not give rise to a factual dispute material to determining that the ownership of, and the servicing rights to, the loan secured by the Note were transferred to Flagstar before Abbas assigned the Deed of Trust.

Even if the assignment of the Deed of Trust from MERS to Flagstar was void, the record shows that Flagstar was the holder of the Note at foreclosure and had standing to foreclose on that basis. The defendants submitted the Note indorsement from United Midwest to Flagstar. (Docket Entry No. 11, Ex. A-1). They also submitted an affidavit from Vanessa Ellison, a Flagstar loan-administration analyst, stating that based on her review of Flagstar's records, United Midwest indorsed the Note to Flagstar, and Flagstar possessed it, when Flagstar foreclosed on the Antonys' property. (Docket Entry No. 14, Ex. A ¶¶ 8(a), 8(f)). These statements are uncontroverted by competent evidence.

Under the Texas Property Code, two parties have standing to initiate a non-judicial foreclosure sale: the mortgagee and the mortgage servicer acting on behalf of the mortgagee. *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 342–43 (5th Cir. 2013) (per curiam); *see* TEX. PROP. CODE §§ 51.002, 51.0025. A mortgagee is "the grantee, beneficiary, owner, or holder of a security instrument"; "a book entry system"; or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." TEX. PROP. CODE § 51.0001(4). Texas law defines a "holder" as "the person in possession of a negotiable instrument that is payable either to bearer or an identified person that is the person in possession[.]" TEX. BUS. & COM. CODE § 1.201(b)(21)(A). "A person can become the holder of an instrument when the instrument is issued to that person; or he can become a holder by negotiation." *Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing TEX. BUS. & COM. CODE. § 3.201 cmt. 1 (2002)). "[N]egotiation requires transfer of possession of the instrument *and* its indorsement by the holder." TEX. BUS. & COM. CODE. § 3.201(b) (emphasis added).

The Ellison affidavit established both elements required to show that Flagstar held the Note: Ellison stated that United Midwest indorsed the Note to Flagstar, and that Flagstar possessed it,

when Flagstar foreclosed on the Antonys' property. The case law is clear that "testimony is sufficient" to prove note transfer and ownership. *See, e.g.*, *Christian v. Univ. Fed. Sav. Ass'n*, 792 S.W.2d 533, 534 (Tex. App.—Houston [1st Dist.] 1990, no writ). The Antonys do not make arguments or submit evidence disputing the accuracy of Ellison's statements. There is no factual dispute material to determining that Flagstar had standing to foreclose as a mortgagee.

The Antonys finally argue that the court manifestly erred in "substituting itself for the factfinder" by "finding" a typographical error in the indorsement. The court made a legal conclusion, not a factual finding. The court reasoned that the Antonys had identified an error in the Note indorsement that, at most, made the Note voidable, and that the Antonys did not have standing to challenge the assignment on that basis. *Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220, 225 (5th Cir. 2013).

**IV.     Conclusion**

The Antonys have not shown that manifest legal error entitles them to the relief they seek. The motion for reconsideration is denied. (Docket Entry No. 24).

SIGNED on May 19, 2016, at Houston, Texas.

                                        Lee H. Rosenthal
                                    United States District Judge